Hickman v Hickman (2022 NY Slip Op 02318)

Hickman v Hickman

2022 NY Slip Op 02318

Decided on April 7, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 7, 2022

532082
[*1]Lisa Hickman, Appellant,
v
George Hickman, Respondent.

Calendar Date:February 8, 2022

Before:Garry, P.J., Egan Jr., Pritzker, Colangelo and Ceresia, JJ.

Stephen L. Molinsek, LLC, Delmar (Stephen L. Molinsek of counsel), for appellant.
Assaf & Siegal PLLC, Albany (David M. Siegal of counsel), for respondent.

Garry, P.J.
Appeal from an order of the Supreme Court (Platkin, J.), entered September 4, 2020 in Albany County, which denied plaintiff's motion to modify an award of maintenance and for counsel fees.
Plaintiff (hereinafter the wife) and defendant (hereinafter the husband) were divorced in 2012. The parties' divorce judgment required the husband to pay the wife spousal maintenance in the sum of $50,000 per year (or approximately $4,167 per month) for five years, as well as child support for their two children. In May 2020, after the maintenance obligation had terminated, the wife moved to modify the maintenance provision of the divorce judgment pursuant to Domestic Relations Law § 236 (B) (9) (b) (1), seeking spousal maintenance in the sum of $7,000 per month and an award of counsel fees. Supreme Court denied the wife's motion, prompting this appeal.
Domestic Relations Law § 236 (B) (9) (b) (1) provides that a court in a matrimonial action may modify a maintenance award of any prior order or judgment made after trial "upon a showing of the payee's inability to be self-supporting or upon a showing of a substantial change in circumstance, including financial hardship." "The party seeking the modification of a maintenance award has the burden of establishing the existence of the change in circumstance[] that warrants the modification" (Noren v Babus, 144 AD3d 762, 764 [2016] [internal quotation marks and citations omitted]; see Gahagan v Gahagan, 172 AD3d 1007, 1008 [2019]; Chisholm v Chisholm, 138 AD2d 829, 830 [1988]). "Determining whether a substantial change has occurred and the extent of relief occasioned by such a change are matters addressed to the discretion of the trial court, with each case turning on its particular facts" (Chisholm v Chisholm, 138 AD2d at 830 [citations omitted]; accord Hall v Hall, 22 AD3d 979, 980-981 [2005]; see Stricos v Stricos, 309 AD2d 1047, 1048 [2003]). A modification is generally not appropriate where one spouse "has the present ability to obtain higher paying employment, but brings about a reversal of financial condition by the spouse's own actions or inactions" (Hall v Hall, 22 AD3d at 981 [internal quotation marks and citations omitted]). A hearing is not required on a maintenance modification application unless the movant makes "a prima facie showing of entitlement to a modification" (Rockwell v Rockwell, 74 AD3d 1045, 1046 [2010]; see Lewis v Lewis, 43 AD3d 462, 463 [2007]) and demonstrates "the existence of genuine issues of fact regarding a substantial change [in] circumstance[]" (Foster v Jones, 301 AD2d 853, 853 [2003]; see Rockwell v Rockwell, 74 AD3d at 1046; Vinnik v Vinnik, 295 AD2d 339, 339-340 [2002]).
In the divorce judgment and the decision upon which it was based, Supreme Court imputed annual income of $55,000 to the wife. The court acknowledged that she had ceased full-time employment to be a mother and homemaker for 14 years during the marriage. However, the court noted, based on her education [*2]and prior work experience, that she was qualified and capable of obtaining employment and, although it might take some time, she could work toward self-sufficiency during the five-year duration of ordered maintenance payments. The court also noted that the wife had been aware of the divorce proceedings and her need to support herself for several years at that time, but had not yet taken steps leading to her return to self-sufficiency, had not engaged in serious efforts to find employment, and appeared to lack interest in returning to the workforce.
Accepting as true the wife's assertions in her application for modification, she applied for more than 100 jobs over 18 months, finally being offered one position with an annual salary of $40,000. After 15 months in that position, which had work hours from 9:00 a.m. to 5:00 p.m., she quit her job because she felt that she needed more flexibility to transport her children — then both teenagers — to afterschool activities. The wife then purchased a nonmedical home care business, despite having no experience in that field. The business thereafter experienced net losses each year, and she lacked capital to advertise and market its services.[FN1] The wife avers that she unsuccessfully continued to look for jobs and tried to sell the business. Due to the expenses of the marital residence, the wife agreed to sell it earlier than required by the divorce judgment. Using some of the money from that sale along with a large mortgage, she purchased a spacious, expensive house, just five months before the maintenance payments were scheduled to cease.
Although the record demonstrates that the husband's income increased significantly after the divorce, that is not determinative and does not necessarily present a substantial change in circumstance warranting a modification to increase maintenance (see Ward v Ward, 79 AD2d 683, 683-684 [1980], lv denied 52 NY2d 705 [1981]; see also Weill v Weill, 17 AD3d 666, 667 [2005]; Matter of Love v Love, 303 AD2d 756, 757 [2003]). The wife was not required to show a change in circumstance that was unexpected, but she was required to establish a substantial change in circumstance or an inability to support herself (see Gahagan v Gahagan, 172 AD3d at 1008). The record supports the conclusion that the wife's behavior was at least partially responsible for her current financial situation, considering that she voluntarily left her job, purchased a house beyond her means and, contrary to advice from professionals, purchased a business that resulted in no profit (see Zacchia v Zacchia, 168 AD2d 677, 678 [1990]). Despite some proof of her 18-month job search before gaining employment, the wife did not demonstrate that she was unable to find employment after quitting that job or discovering that her business was unprofitable (see Weinig v Weinig, 198 AD3d 470, 470 [2021]; compare Herschorn v Herschorn, 92 AD3d 500, 501 [2012]). As the wife failed to make a prima facie showing of [*3]an inability to be self-supporting or a substantial change in circumstance that would warrant reinstating spousal maintenance, she was not entitled to a hearing on her application (see Rockwell v Rockwell, 74 AD3d at 1046; Szemansco v Szemansco, 11 AD3d 787, 788 [2004]).
Upon an application to modify a maintenance award, "the court may direct a spouse" to pay the other party's counsel fees "as, in the court's discretion, justice requires" (Domestic Relations Law § 237 [b]). Although there is "a rebuttable presumption that counsel fees shall be awarded to the less monied spouse" (Domestic Relations Law § 237 [b]), "in exercising its discretionary power to award counsel fees, a court should review the financial circumstances of both parties together with all the other circumstances of the case, which may include the relative merit of the parties' positions" (DeCabrera v Cabrera-Rosete, 70 NY2d 879, 881 [1987]; see Matter of Cannam v Phillips, 176 AD3d 810, 812 [2019]). Despite the wife being the less monied spouse, Supreme Court did not abuse its discretion in denying her request for counsel fees, considering that her application lacked merit and it was decided on the papers such that counsel's expenditure of time was relatively limited (see Matter of Alexander v Strathairn, 69 AD3d 930, 931 [2010]).
Egan Jr., Pritzker, Colangelo and Ceresia, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The purchase of this business was contrary to advice by the wife's financial planner and her father, who had retired from a career in business. The parties dispute whether that advice was based upon a financial analysis or upon consideration of the wife's other obligations.